IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAROL TAYLOR, *et al.*,                                               *

      Plaintiffs,

    v.                                                                          Civil Action No. 8:22-cv-01129-PX

                                                  *

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

      Defendants.                                                        *
                                                  ***

**<u>MEMORANDUM OPINION</u>**

This case stems from a horrific single car crash that claimed the life of Damian Farmer, Plaintiff Carol Taylor's son. The Complaint lays at Defendants' feet the responsibility for Farmer's death. Pending before the Court is Defendants' motion for summary judgment. ECF No. 14. The issues are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the Court GRANTS the motion.

**I.      Background[1]**

    **A.    The Crash**

In the early morning hours of December 19, 2020, Damion Farmer was driving southbound on Route 202 in Upper Marlboro, Maryland. ECF Nos. 14-3; 14-8 at 5. Prince George's County Police Officer Richard Biddy was sitting in his police cruiser perpendicular to Route 202 when Farmer sped by him at a high rate of speed. ECF No. 14-3. Officer Biddy began to follow Farmer. *Id.* Video footage from a dash camera mounted to Officer Biddy's

---

[1] Except where otherwise noted, the facts related below are undisputed and construed most favorably to Plaintiffs as the non-movants. *See The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 364 n.3 (D. Md. 2011).

police cruiser captures his travel behind Farmer.  *Id.*  Officer Biddy trailed Farmer by several car

lengths, and the distance between the cars grew as Farmer seemed to speed from the cruiser.  *Id.*

Within thirty seconds after he started following Farmer, Officer Biddy activated his

emergency lights to execute a traffic stop on the vehicle.  *Id.*  Moments later, the taillights on

Farmer's car disappeared from view.  *Id.*  Officer Biddy turned on the cruiser spotlight to search

for Farmer's car.  *Id.*; ECF 14-1 at 12.  Although Officer Biddy shined the spotlight in the

direction of travel, Farmer's car was gone.  ECF No. 14-3.

Suddenly, Officer Biddy drove up to a plume of smoke, and Farmer's wrecked vehicle

came into view on the left side of the roadway at the point in which the road bends to the right.

*Id.*  The car had crashed into a tree.  *Id.*; ECF No. 14-8 at 7.  From the force of impact, the car

was now an unrecognizable heap of metal.  *Id.*  Officer Biddy stopped, walked to the vehicle,

and communicated through police dispatch that he believed the driver was dead.  ECF Nos. 14-1

at 12; 14-6 at 4; 14-7.  Within eight minutes after Officer Biddy's call to dispatch, several first

responders arrived on scene.  ECF No. 14-3.

At the same time, Defendant Officer Brandon Fooks also responded to the scene.  ECF

Nos. 14-5; 14-6 at 4; 14-7.  He arrived at the site coming from the other direction on Route 202.

ECF No. 14-5.  Officer Fooks' dash camera video captures what appears to be Farmer's body,

lying still in the middle of the roadway about 300 feet from the crash site.  *Id.*; ECF No. 14-8 at

6.

In connection with Farmer's death, a Maryland State Police Master Trooper, Jason Batty,

investigated the cause of the crash.  ECF No. 14-8.  Based on the nature of the impact, the road

topography, and other factors, Trooper Batty concluded that Farmer drove directly into a tree at

the point in which the road curved.  *Id.* at 7.  The report further documented that Farmer had

been found unresponsive and was pronounced dead at the scene. *Id.* at 6. No alcohol or drugs was found in Farmer's body. *Id.*

On February 21, 2021, Officer Fooks went to the home of Plaintiff Carol Taylor because she had reported to the police that she suspected a firearm had been stolen from her home. ECF No. 25. During the conversation, which was recorded with Officer Fooks' body-worn camera, Taylor mentioned the circumstances of Farmer's death. *Id.* Officer Fooks told Taylor that he was present at the crash scene, and that it appeared Farmer had died instantly when his car hit a tree. *Id.*

## B. The Lawsuits

On April 14, 2021, Taylor and Farmer's father, Darwin Farmer, brought a wrongful death and survival action in the Circuit Court for Prince George's County against the "Police Department of Prince George's County" and "Ford Motor Company." ECF No. 14-11. After Plaintiffs amended their complaint, Prince George's County moved to dismiss the claims on the ground that the Police Department is not a legal entity capable of being sued. ECF No. 14-12 at 4. Plaintiffs failed to respond, and the Circuit Court dismissed the claims with prejudice. ECF No. 14-13.

Plaintiffs next moved for reconsideration. ECF No. 14-10 at 4. At a hearing, Plaintiffs argued that the County, appearing on behalf of the Police Department, lacked "standing" to move for dismissal, and thus Plaintiffs somehow did not need to respond to the motion to dismiss. ECF No. 21-2 at 77–78. The Circuit Court rejected the argument and reaffirmed dismissal as to the Police Department. *Id.* at 80, 85.[2] But the court did allow Plaintiffs an opportunity to amend the complaint to sue the proper party. *Id.* at 85.

---

[2] The Court also granted an unopposed motion to dismiss the claims against Ford Motor Company.

Plaintiffs subsequently filed a Second Amended Complaint in the Circuit Court, naming Prince George's County, Officer Fooks, and a John Doe officer as defendants. ECF No. 14-14. Defendants once again moved to dismiss the Second Amended Complaint, arguing that because the case had been originally dismissed with prejudice, the court should reject the Second Amended Complaint. ECF No. 14-15. The Circuit Court agreed with Defendants and struck the Second Amended Complaint, concluding that because "final judgment had been enforced," there was no "active case or complaint to amend." ECF No. 14-2.

Plaintiffs next filed near identical claims in this Court. ECF No. 1. They allege that Defendants caused Farmer to crash, giving rise to wrongful death and survival claims of assault, battery, intentional infliction of emotional distress, and gross negligence, as well as state and federal constitutional violations. *Id.* ¶¶ 38–68, 78–84. The Complaint separately alleges that the County's failure to train its officers on proper traffic stop procedures supports a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Id.* ¶¶ 69–77.

Shortly after the suit was filed, counsel for Defendants voluntarily produced to Plaintiffs the police video footage that captured the car crash. ECF No. 14-9. Defendants also asked the Court for leave to file a motion to dismiss the Complaint. ECF No. 8. The Court granted that request on August 3, 2022 and directed Defendants to file their motion within two weeks. ECF No. 10. Despite this, Plaintiffs inexplicably moved for default judgment on August 12, 2022, contending that Defendants had failed to timely defend the action. ECF No. 12. The Court denied that motion and warned Plaintiffs that future filing of frivolous motions could invite sanctions. ECF No. 19.

On August 17, 2022, Defendants moved for summary judgment in their favor on all claims. ECF No. 14. In their response, Plaintiffs voluntarily abandon the battery and assault

causes of action.  ECF No. 21 at 26–27.  They otherwise oppose summary judgment on the

merits.  *Id.*

## II.     Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing

all reasonable inferences in the light most favorable to the non-moving party, finds that no

genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a

matter of law.  Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th

Cir. 2011).  Summary judgment must be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the

mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d

514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)) (alteration in original).  Genuine

disputes of material fact are not created "through mere speculation or the building of one

inference upon another."  *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting

*Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

Where a motion for summary judgment is filed prior to formal discovery, the non-movant

may attest, by affidavit filed pursuant to Rule 56(d), that for "specified reasons," discovery is

necessary before she can "present facts essential to justify [her] opposition."  Fed. R. Civ. P.

56(d).  But where the non-movant makes no such showing, and instead litigates the motion on

the merits, the Court will adjudicate the motion accordingly.  *Evans v. Tech. Applications &*

*Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).

Here, Plaintiffs made no attempt, through a Rule 56(d) affidavit or otherwise, to convince this Court that additional discovery is necessary.  In fact, Plaintiffs have supplied their own evidence beyond the four corners of the Complaint for the Court's consideration.  Thus, even though this motion precedes formal discovery, the Court sees no impediment to deciding whether summary judgment is proper.  *Cf. Shaw v. Foreman*, No. 20-7185, 2023 WL 1486310, at *5 (4th Cir. Feb. 3, 2023) (reversing pre-discovery grant of summary judgment to defendants where pro se Plaintiff sought to discover material video footage that defendant had not yet produced).

**III.   Analysis**

**A.  Fourth Amendment Claims Against Defendant Officers**

The Complaint avers that the Defendant Officers violated Farmer's Fourth and Fourteenth Amendment rights to the United States Constitution, as well as companion claims under the Maryland Declaration of Rights.[3]  The Complaint specifically alleges that the officers illegally "seize[d]" Farmer when they attempted to execute a traffic stop and used excessive force by "ramm[ing]" Farmer's car, causing him to crash.  ECF No. 1 ¶¶ 64, 66.  Defendants urge summary judgment on both liability theories, principally because no evidence supports the claims.  ECF No. 14-1 at 24–25.  For the reasons discussed below, the Court agrees with Defendants.

Beginning with the unconstitutional "seizure" claim: although the Fourth Amendment protects an individual against unreasonable seizures, a person is not "seized" pursuant to the Fourth Amendment unless a law enforcement officer "has in some way restrained [the person's] liberty." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).  A seizure occurs where an officer exhibits a

---

[3] The state constitutional claim is analyzed in pari materia to the Fourth Amendment claim. *See Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011).

"show of authority" *and* the person submits to that assertion of authority, such that he is brought under the officer's control. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Generally, where an individual stops his vehicle in response to an officer's display of emergency lights, the individual is considered "seized" under the Fourth Amendment. *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018).

Construing the record most favorably to Plaintiffs, no evidence suggests that Farmer had ever been "seized" at any point before his crash. Although the Complaint avers in conclusory fashion that Officer Fooks had "seized" Farmer, the contemporaneous dash camera video clearly demonstrates otherwise—Fooks arrived at the scene well after the crash occurred and when Farmer was lying in the road. ECF No. 14-5. In response, Plaintiffs seem to suggest that when Officer Fooks visited Ms. Taylor about the stolen firearm, he admitted that he was responsible for the crash. ECF No. 1 ¶ 34; ECF No. 21 at 11, 30. But nothing in the video footage of this conversation supports Plaintiffs' bald contention. ECF No. 25.

Nor does any evidence support that Officer Biddy ever "seized" Farmer. To be sure, the video footage reflects that Officer Biddy followed Farmer as he sped down the street, and that Biddy activated his emergency lights in an *attempt* to pull Farmer over. But clearly Farmer never submitted to that attempt. *See U.S. v. Stover*, 808 F.3d 991, 996 (4th Cir. 2015) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)); *see also Willhauck v. Halpin*, 953 F.2d 689, 716 (1st Cir. 1991) ("A Fourth Amendment seizure does not occur when a police officer turns on his blue lights and thereby signals the driver of a vehicle to pull over."). Instead, Farmer tragically crashed his vehicle during and in the course of *not* submitting to Officer Biddy's show of authority. Accordingly, no evidence supports that Farmer had ever been "seized" for Fourth

Amendment purposes.[4]

Next, the Court considers the excessive force claim.  In the course of exercising lawful

authority to detain a person, an officer must use only such force that is reasonably necessary to

bring the individual under police control.  *Est. of Armstrong ex rel. Armstrong v. Vill. of

Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016).  Such force must be "objectively reasonable" based

on the totality of the circumstances.  *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).  Here, the

Complaint brazenly avers that a police officer used excessive force in "ramm[ing]" Farmer's car

from behind, causing him to crash.  ECF No. 1 ¶ 66.  But the record evidence flatly proves

otherwise.  Officer Biddy's dash camera footage shows that Biddy kept a healthy distance from

Farmer's car for the duration.  ECF No. 14-3.  Further, the video makes clear that at the time of

impact, Officer Biddy was nowhere near Farmer's car.  *Id.*  From this evidence, no rational trier

of fact could conclude that Officer Biddy had ever "rammed" Farmer's car.

Nor does the record at all support Plaintiffs' fallback argument that Officer Biddy used

excessive force in shining his spotlight in Farmer's face moments before the crash.  ECF No. 21

at 10.  Indeed, the video unequivocally shows that only after Farmer's vehicle disappeared from

the road did Officer Biddy use his spotlight.  ECF No. 14-3.  Thus, because no evidence could

ever support an excessive force claim, summary judgment must be granted in Defendants' favor.

### B.  *Monell* Claim Against Prince George's County

The Complaint also brings a *Monell* claim against the County for alleged failures to train

its officers.  ECF No. 1 ¶ 75.  A municipality may be held responsible for the constitutional

---

[4] Plaintiffs also seem to argue that Officer Biddy's decision to activate his emergency lights to pull over Farmer itself violates the Fourth Amendment.  ECF No. 21 at 24–25.  Even setting aside that attempted seizures are not subject to Fourth Amendment protection, the argument is meritless.  *Stover*, 808 F.3d at 996.  Officer Biddy's video footage supports the officer's reasonable suspicion that Farmer was speeding, in violation of Md. Code Ann., Transp. § 21-801.  Thus, no reasonable trier of fact could conclude that Officer Biddy's decision to attempt a traffic stop was not objectively reasonable.  *Bowman*, 884 F.3d at 209.

violations committed by its officers if the plaintiff can show the violations stemmed from an unconstitutional policy, practice, habit, or custom.  *See Monell*, 436 U.S. at 690; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  On a failure-to-train claim, liability attaches where the plaintiff can show not only that the municipality's substandard training led to the constitutional violations alleged, but also that the municipality was deliberately indifferent to that "known or obvious consequence."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

No evidence supports a *Monell* claim, principally because nothing in the record supports that any individual officer had committed any constitutional violations.  Plaintiffs push a misguided narrative that specific training failures are to blame for Farmer's death.  But all Plaintiffs offer as evidence is a near twenty-year-old memorandum of understanding between the United States Department of Justice and the Prince George's County Police Department discussing all manner of excessive force allegations.  ECF Nos. 21 at 8; 21-2 at 20.  This alone hardly supports the contention that a traffic fatality some two decades later is rooted in the claimed department deficiencies of the early 2000s.  Summary judgment is thus granted as to the *Monell* claim.

### C.  Common Law Claims

The remaining common law claims are easily disposed.  The Complaint avers that the Defendant Officers' conduct constitutes intentional infliction of emotional distress as to Farmer.  ECF No. 1 ¶¶ 49–51.  An IIED claim is reserved for instances of "extreme and outrageous conduct" that intentionally or recklessly causes a plaintiff severe emotional distress.  *Harris v. Jones*, 281 Md. 560, 566 (1977).  Nothing captured in the video footage, or otherwise submitted by the parties, suggests any misconduct on the officers' part, let alone "extreme and outrageous"

conduct which caused Farmer emotional distress. *Id.*

Similarly, no evidence whatsoever supports that Defendants were grossly negligent. Gross negligence amounts to the "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Romanesk v. Rose*, 248 Md. 420, 423 (1968). For this claim, Plaintiffs now seem to suggest that the officers were grossly negligent in failing to provide medical assistance to Farmer after the crash. ECF No. 21 at 34. Nothing supports this contention. The video evidence clearly shows that the force of impact from the crash sent Farmer's body flying some 300 feet onto the pavement. ECF Nos. 14-3; 14-5; 14-8 at 6. Within eight minutes, several emergency personnel arrived at the scene. ECF No. 14-3. Of all the trained and experienced first responders, none observed any signs of life coming from Farmer, a tragic reality borne out by Officer Fooks' dash camera video footage. ECF Nos. 14-5; 14-8 at 6. By contrast, no evidence supports that Farmer had been crying out in pain or for help, as the Complaint originally averred. ECF No. 1 ¶ 27. Thus, because no evidence supports the common law claims, summary judgment must be granted in Defendants' favor.[5]

## IV.    Conclusion

For the foregoing reasons, the motion for summary judgment is granted on all claims. A separate Order follows.

2/7/2023 _____                              _____/S/_____
Date                                                    Paula Xinis
                                                        United States District Judge

---

[5] Summary judgment must also be granted to Defendants on the survival action for funeral expenses, which is derivative of the underlying common law claims. ECF No. 1 ¶ 132; *Mang v. City of Greenbelt, Md.*, No. DKC-11-1891, 2012 WL 115454, at *8 (D. Md. Jan. 13, 2012).